**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:14-cv-63-RJC**
**(3:05-cr-103-RJC-DSC-2)**

| | | |
|---|---|---|
| **JERMAL DANIELS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on Petitioner's Motion for

Production of Documents, (Doc. No. 13), and on Petitioner's Motion for Leave to Amend, (Doc.

No. 17).

## I.     BACKGROUND

### A.  Offense Conduct

Pro se Petitioner Jermal Daniels and seven other co-defendants, including his girlfriend Toria

Douglas and Adreian Jackson, were involved in a drug-trafficking conspiracy from June 2003

through June 2005.  The conspiracy came to light when Jackson was arrested for selling drugs

and agreed to cooperate with police.  United States v. Daniels, 323 F. App'x 201, 204 (4th Cir.

2009).  Jackson arranged a meeting with Petitioner, who was one of his suppliers.  Id.  Officers

arrested Petitioner after he arrived.  Id.  When police searched Petitioner incident to his arrest,

they found four bundles, each containing ten bags of heroin, in his underwear.  Id.  Jackson then

took officers to a nearby apartment complex, where he identified cars belonging to Petitioner and

Douglas.  Id.  A license check on Douglas's car revealed that her residence was 1305 Kelston

Place, Apartment 106.  Id.  A key retrieved from Petitioner turned the lock on this apartment

door.  Id.  Officers obtained a search warrant for the apartment and, during a search on March 5,

2005, they seized several baggies of heroin and powder cocaine, drug-packaging equipment,

$63,060 in cash, six firearms, a bulletproof vest, and ammunition.  Id. at 205.

As a result of the investigation, Petitioner was charged in a Third Superseding Indictment

with conspiracy to possess with intent to distribute one kilogram or more of heroin and 500

grams or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One);

possession with intent to distribute heroin and aiding and abetting, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Count Five); possession with intent to distribute 500

grams or more of cocaine and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(B) and 18 U.S.C. § 2 (Count Six); possession of a firearm during and in relation to a drug-

trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Seven); possession of a firearm by

a convicted felon, in violation of 18 U.S.C. § 922(g) (Count Eight); and intimidating and

threatening a witness, in violation of 18 U.S.C. § 1512(b) (Count Thirteen).  (Crim. Case No.

3:05-cr-103-RJC-DCK-2, Doc. No. 194: Third Superseding Indictment).  Because the Third

Superseding Indictment expanded the time frame of the conspiracy from December 2004 through

March 2005 to June 2003 through June 2005, Petitioner moved to continue his trial.  (Id., Doc.

No. 197).  This Court denied the motion because documentation relating to the expanded time

frame of the conspiracy had already been provided during discovery.  (Id., Doc. No. 199).

The Government filed a notice of intent to seek enhanced penalties under 21 U.S.C. § 851

based on Petitioner's two prior felony drug convictions: (1) a 1990 federal conviction for

possession with intent to distribute cocaine base and distribution of cocaine base and (2) a 1989

New York conviction for felony criminal possession of a controlled substance. (Id., Doc. No. 9).

After Petitioner's arrest and while he was in the Mecklenburg County Jail, he assaulted co-defendant Jackson's father, Avery Brice, causing a four-inch cut on his face and a cut requiring stitches on the back of his head. (Id., Doc. No. 308 at 516-17: Trial Tr. Vol. III). Based on this and other incidents, Petitioner was placed in solitary confinement before trial. See (Id., Doc. No. 192). Petitioner filed two motions to suppress the evidence obtained from search of his person, the use of the key in the door of the apartment, and the subsequent search of the apartment. (Id., Doc. Nos. 61, 173). In the second motion to suppress, Petitioner specifically alleged that the heroin obtained from his person had to be suppressed "as a result of an unreasonable public strip search" and that the use of the key in the lock of the door to an apartment violated the Fourth Amendment. (Id., Doc. No. 173 at 1, 5). After holding two hearings, this Court denied the motions to suppress. See (Id., Doc. Entry dated October 13, 2005; Doc. No. 227-1 at 72-78: May 23, 2006 Supp. Tr.). After the second hearing, the Court also addressed Petitioner's concerns regarding his purported lack of access to his attorney while confined. The Court stated that counsel needed to work with the U.S. Marshals and the Government to secure access to Petitioner and that counsel should inform the Court if he did not receive it. (Id., Doc. No. 227-1 at 95-96). The Court noted that the security measures were "rationale responses to legitimate law enforcement concerns." (Id. at 96).

At trial, Jackson testified that Petitioner supplied him with heroin, which Jackson then sold. (Id., Doc. No. 306 at 58, 64: Trial Tr. Vol. I). Jackson bought a brick of heroin from Petitioner two or three times a day. (Id. at 65). A brick of heroin was five bundles, and a bundle contained ten bags of heroin. (Id.). Jackson later began purchasing grams of heroin from Petitioner, which were packaged like fingers. (Id. at 67-68). A finger was seven grams of

heroin.  (<u>Id.</u> at 68).  Jackson stated that in 2003 and 2004 he purchased heroin from Petitioner two or three times a week.  (<u>Id.</u> at 65, 122).  Jackson stated that he would later buy three bundles a day through an intermediary.  (<u>Id.</u> at 123).  Jackson stated that William Boyd ("Pooh Bear"), Raheem Williams, and Mike McFadden also purchased heroin from Petitioner and that basically everyone who was selling heroin on Beatties Ford Road was getting it from Petitioner.  (<u>Id.</u> at 75-76, 79, 114).  Jackson also testified that he had purchased powder cocaine from Petitioner and that he had seen Petitioner carrying several different firearms.  (<u>Id.</u> at 68-70, 109).

Charles McCombs testified that he was involved in a conspiracy with Petitioner, that he and Petitioner made three trips to New York to pick up heroin, and they obtained 300 grams of heroin on each of those trips.  (<u>Id.</u>, Doc. No. 309 at 867, 889-90).  Detective Robson testified that he recovered 40 bags of heroin from Petitioner at the time of his arrest.  (<u>Id.</u>, Doc. No. 306 at 234: Trial Tr. Vol. I).  Robson also testified that Petitioner had reported a vehicle stolen from 1305 Kelston Place and that he had a daughter with Toria Douglas.  (<u>Id.</u> at 251).  Robson testified that, during the search of the apartment pursuant to a warrant, officers found a shoebox containing heroin, items used to package and sell heroin, and a large quantity of cocaine.  (<u>Id.</u> at 255).  Robson also testified about the six firearms found in the apartment.  (<u>Id.</u>, Doc. No. 307 at 314-33, 336-39: Trial Tr. Vol. II).

Petitioner's girlfriend Toria Douglas testified that she and Petitioner lived together in the apartment at 1305 Kelston Place.  (<u>Id.</u>, Doc. No. 308 at 566-67, 587-88: Trial Tr. Vol. III).  Douglas testified that she purchased three of the firearms found at 1305 Kelston Place at Petitioner's direction and with funds he gave her because he could not purchase the firearms in his own name.  (<u>Id.</u> at 556-57, 561-66, 570-73).  Corey Edwards testified that Petitioner sold him an ounce of cocaine three times a week for about eight months, that Petitioner would travel to

New York to get drugs and would travel to South Carolina to sell drugs, and that occasionally Edwards would sell drugs for Petitioner. (Id. at 672, 675, 683, 685). William Boyd testified that he sold heroin for Petitioner and that sometimes an intermediary would bring the drugs from Petitioner to Boyd. (Id. at 754, 760, 778-79). Boyd testified that he would buy two or three bundles of heroin every two or three days for himself, that he did this for seven or eight months, and that he would buy three to four bundles of heroin every two to three days for Jackson. (Id. at 767-69). He also testified that he saw Petitioner with firearms. (Id. at 772).

Jennifer Mills, a forensic chemist with the Charlotte Police Department Crime Lab, testified that she analyzed the drugs found at 1305 Kelston Place and that they contained more than 500 grams of cocaine (powder). (Id., Doc. No. 309 at 1039-43). She also identified 200.68 grams of heroin that was recovered from the same location. (Id.).

### B. Petitioner's Jury Verdict and First Sentencing

A jury convicted Petitioner on all counts. (Id., Doc. No. 232). The probation officer prepared a presentence report ("PSR"), which stated that 1,097 grams of cocaine and 245.5 grams of heroin were found in Petitioner's apartment on the date of his arrest. (Id., PSR at ¶ 12). Based on evidence from coconspirators, the PSR recommended a finding that Petitioner was responsible for one kilogram of heroin and 1,097 grams of cocaine, or the equivalent of 1,219.4 kilograms of marijuana. (Id. at ¶ 21). Applying the 2006 Guidelines, the probation officer calculated Petitioner's base offense level as 32, based on the drug quantity, and applied a four-level adjustment under U.S.S.G. § 3B1.1(a), because Petitioner was the leader of the conspiracy, as well as a two-level adjustment for obstruction under U.S.S.G. § 3C1.1, based on his having threatened co-defendant Boyd to make him recant incriminating statements that he made against Petitioner, which resulted in an adjusted offense level of 38. (Id. at ¶¶ 28, 31-33).

Petitioner had three criminal history points based on his prior convictions. Two points were added under U.S.S.G. § 4A1.1(d) because Petitioner committed the instant offense while on supervised release, and one point was added under U.S.S.G. § 4A1.1(e) because the offense was committed less than two years after his release from custody. (Id. at ¶¶ 54-63). Although the PSR recommended finding that Petitioner was an armed career criminal, defense counsel's objection to this finding was sustained at sentencing. Thus, at sentencing, this Court found that Petitioner's criminal history category was III, based on having six criminal history points. See (Id., Doc. No. 342: Statement of Reasons). The mandatory minimum sentence for Count One was life imprisonment, and Count Seven carried a mandatory consecutive sentence of at least five years. (Id., PSR at ¶ 80).

Petitioner objected to the PSR, arguing, inter alia, that his New York offense for criminal possession of a controlled substance did not qualify as a prior felony conviction. (Id., PSR addnm.). Petitioner also objected at sentencing to the drug amounts listed in the PSR. (Id., Doc. No. 347 at 5: Sent. Tr.). This Court overruled these objections and sentenced Petitioner to life imprisonment on Count One; to 360 months of imprisonment on Counts Five and Six, to be served concurrently; to 120 months of imprisonment on Counts Eight and Thirteen, to be served concurrently; and to 60 months of imprisonment on Count Seven, to be served consecutively. (Id., Doc. No. 341: Judgment). Although the judgment states that Petitioner shall pay court appointed counsel fees, the amount to be paid is blank. (Id.).

## C. Petitioner's Direct Appeal

Petitioner appealed, arguing that this Court erred in denying his motions to suppress, improperly found that he played a leadership role in the offense and that he had obstructed justice, and failed to instruct the jury to find the amount of drugs individually attributable to him

under the conspiracy charge. <u>Daniels</u>, 323 F. App'x at 203-04. The Fourth Circuit held that there was probable cause for Petitioner's arrest; that there was "no clear showing that Daniels was exposed to the public" when the officers searched his underwear; that the police officers acted reasonably in conducting the search, that Petitioner's Fourth Amendment rights were not infringed by the use of his key in the apartment door; and that the search warrant was not invalid based on his argument that it omitted material information regarding the confidential informant. <u>Id.</u> at 208-10. The Fourth Circuit also found that the leadership role and obstruction of justice enhancements were properly applied. <u>Id.</u> at 211. However, the Fourth Circuit determined that, with respect to Count One, this Court had improperly instructed the jury with regard to the jury's finding as to drug quantity under <u>United States v. Collins</u>, 415 F.3d 304 (4th Cir. 2005). <u>Id.</u> at 212-17. Accordingly, the Court vacated and remanded this count, withholding judgment on this count for thirty days to allow the Government the opportunity to elect to apply the default penalty provision in § 841(b)(1)(B), or to request the reversal of the conspiracy conviction and to conduct a new trial. <u>Id.</u> at 217. The Court noted that Petitioner's conviction for Count One was legitimate, and that only his sentence was improper. <u>Id.</u> at 217 n.10.

### D. Petitioner's Resentencing

The Government elected to resentence Petitioner. At the resentencing hearing, counsel showed the supplemental PSR to Petitioner, and this Court explained what the supplemental PSR stated and confirmed with Petitioner that he had reviewed the sentencing memorandum filed by his attorney. (Crim. Case No. 3:05-cr-103-RJC-DCK-2, Doc. No. 425 at 2-4: Resent. Tr.). Petitioner agreed that he had a sufficient understanding of the proceeding to go forward. (<u>Id.</u> at 4). Petitioner argued that the amount of drugs attributable to him should be limited to 254 grams of heroin, the amount found in his apartment on March 5, 2005. (<u>Id.</u> at 4-6). This Court

determined that there was credible testimony from McCombs that he made three trips to New York with Petitioner and purchased 300 grams of heroin on each occasion; from Jackson that he would regularly buy bricks of heroin from Petitioner, that he purchased heroin two to three times a week, and that Petitioner was supplying half of Beatties Ford Road; and from Boyd that he bought three to four bundles of heroin from Petitioner every two to three days for seven to eight months.  (Id. at 8-12).  Accordingly, this Court overruled the objection and determined that Petitioner was responsible for 1,219.4 kilograms of marijuana under the conversion tables.  (Id. at 12).  Defense counsel also showed the Court certificates evidencing courses Petitioner had completed while in prison, which the Court stated it would consider.  (Id. at 14).  This Court then imposed a 360-month sentence on Count One, citing Petitioner's extensive history of violent and drug-trafficking offenses, the fact that he was not deterred from committing the instant offense despite being on supervised release from two prior federal convictions, and the need to protect the public, promote respect for the law, and provide adequate deterrence.  (Id. at 16-18).

Petitioner again appealed, and the Fourth Circuit affirmed, after considering his attorney's Anders brief and the issues Petitioner raised in his supplemental pro se brief.  United States v. Daniels, 493 F. App'x 442 (4th Cir. 2012).  Petitioner filed a petition for a writ of certiorari, which the Supreme Court denied on February 19, 2013.  Daniels v. United States, 133 S. Ct. 1297 (2013).

### E.  Petitioner's Motion to Vacate

On January 31, 2014, Petitioner filed the timely pending motion to vacate pursuant to 28 U.S.C. § 2255.  In the 86-page motion to vacate, he raises numerous contentions, which he sets forth in twenty separate "claims" in his motion to vacate, as follows:  (1) the Fourth Circuit should recall its mandate based on the development of new case law related to Fourth

Amendment searches (<u>Safford Unified Sch. Dist. No. 1 v. Redding</u>, 557 U.S. 364 (2009))

following Petitioner's resentencing and before the appeal was decided (Claim 1); violations of

<u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013), based on the fact that the trial court, not the

jury, raised Petitioner's statutory minimum sentence based on drug amounts (Claims 2 and 3);

violation of <u>United States v. Simmons</u>, 649 F.3d 237 (4th Cir. 2011), and <u>Moncrieffe v. Holder</u>,

133 S. Ct. 1678 (2013), based on Petitioner's claim of "actual innocence" of his enhanced

sentence imposed under 21 U.S.C. §§ 841(b)(1) and 851, on the ground that his prior New York

drug conviction does not qualify as an "aggravated felony" for purposes of the Section 851

enhancement (Claim 4); Fourth Amendment violation under <u>Stone v. Powell</u>, 428 U.S. 465

(1976), based on his contention that he was not given a full and fair opportunity to litigate his

Fourth Amendment claims at trial, in light of the fact that the Supreme Court decision in <u>Safford</u>

was decided before Petitioner's conviction was final (Claim 5); ineffective assistance of counsel

during resentencing based on counsel's failure to show the two-page supplemental PSR to him,

counsel's abandonment of Petitioner's <u>Collins</u> claim at re-sentencing, counsel's stipulation to the

highest base offense level based on drug amounts attributable to Petitioner, counsel's failure to

raise an intervening change of law (<u>Simmons</u>) at resentencing, counsel's failure to object to the

recency points in the calculation of Petitioner's criminal history at resentencing under

Amendment 742, counsel's failure to object to the PSI under Amendment 715, and counsel's

failure to describe to the Court at resentencing Petitioner's extensive rehabilitation effort, for

purposes of mitigation under Section 3553(a) (Claim 6); a Sixth Amendment confrontation

clause violation based on the fact that Petitioner was not able to confront forensic chemist James

Whiteside at trial on the fact that no fingerprints were found on the firearms related to the

firearms charges against Petitioner (Claim 7); this Court's failure to continue trial based on the

Government's disclosure of additional discovery, which included <u>Brady</u>, <u>Giglio</u>, and <u>Jencks</u> material, ineffective assistance of counsel based on counsel's failure to move to continue trial based on the additional evidence, and ineffective assistance of counsel based on counsel's failure to communicate a plea offer as to Counts 1 and 7 (Claims 8 and 9); a violation of Petitioner's constitutional right to a unanimous jury instruction for the firearms charge in Count 8 of the indictment (Claim 10); prosecutorial misconduct based on the Government's alleged false statement to the Court that the superseding indictment had expanded the date on the conspiracy charge by only about one month (Claim 11); a violation of Petitioner's Sixth Amendment rights based on the Government's intrusion in the attorney-client relationship (Claim 12); a Sixth Amendment violation during sentencing, under <u>United States v. Booker</u>, 543 U.S. 220 (2005), based on this Court's application of an upward adjustment of a total of seven points under the Sentencing Guidelines (Claim 13); ineffective assistance of appellate counsel based on counsel's failure to argue on appeal that the buyer-seller relationship was not shown or proved during trial (Claim 14); a violation of the right to a fair trial based on this Court's refusal to give an instruction that a buyer/seller relationship is not itself a conspiracy (Claim 15); a double jeopardy claim based on the fact that North Carolina's drug tax was assessed against Petitioner (Claim 16); error by this Court in requiring Petitioner to pay $133,000 in restitution to the United States, without a finding as to his ability to pay (Claim 17); a clerical error in Petitioner's PSR, resulting in incorrect information regarding the drug amount attributable to Petitioner (Claim 18); prosecutorial misconduct, officer misconduct, and <u>Brady</u> violation, based on Petitioner's allegations that the investigating officer falsified evidence to show that Petitioner had control, dominion over, and/or resided at the apartment at 1305 Kelston Place (Claim 19); and cumulative error (Claim 20).

The Government filed its response in opposition to the motion to vacate on October 15, 2015. (Doc. No. 8). On January 25, 2016, Petitioner filed a motion for production of documents, seeking various discovery from the Government. (Doc. No. 13). On March 18, 2017, Petitioner filed a motion for leave to amend or supplement his motion to vacate. (Doc. No. 17). The Government filed its response to the motion for leave to amend on March 22, 2017. (Doc. No. 18).

## II.  STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's Response, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.  DISCUSSION

### A.  Claims Raised in Petitioner's Initial Motion to Vacate

As noted, Petitioner has raised a multitude of claims in his 86-page motion to vacate. For the reasons stated below, the Court denies each of Petitioner's claims on various grounds. Because Petitioner has raised numerous claims, the Court will address and dispose of them in accordance with the grounds for dismissal. That is, all of Petitioner's claims will be denied because they are either not cognizable in 2255 proceeding, are procedurally defaulted, and/or are without merit.

#### 1. Petitioner's Contentions that Are Not Cognizable in a Section 2255 Proceeding

**(Included in Claims 1, 5, 13, 17, and 18).**

The Court first finds that some of Petitioner's contentions (set forth in Claims 1, 5, 13, 17, and 18) are subject to dismissal because they are simply not cognizable in a Section 2555 action. Section 2255 provides relief for constitutional and jurisdictional errors. It does not provide relief for non-constitutional errors of federal law, unless the error involves "'a fundamental defect which inherently results in a complete miscarriage of justice.'" See United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir. 1999) (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)). "Barring extraordinary circumstances, . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999). Additionally, assertions of Fourth Amendment error cannot be raised on collateral review when the applicant has had a full and fair opportunity to litigate these claims. See Stone v. Powell, 428 U.S. at 480; Boggs v. Bair, 892 F.2d 1193, 1199-1200 (4th Cir. 1989) (holding full and fair opportunity to address claim existed even where petitioner asserted a change in the law).

Petitioner's requests for this Court to order the Fourth Circuit Court of Appeals to recall its mandate (Claim 1) and for this Court to revise the PSR (Claim 18) under Federal Rule of Criminal Procedure 36 based on a clerical error do not state constitutional claims or errors of federal law that involve a fundamental defect that would result in a complete miscarriage of justice. See (Doc. No. 1 at 15-18, 82-83). Therefore, these claims for relief are not cognizable under § 2255. Additionally, this Court lacks authority to order a higher court to recall its mandate, the Fourth Circuit has already denied two motions to recall its mandate, see Fourth Circuit Appeal No. 11-5147, and this Court has previously denied Petitioner's motion to correct the PSR. (Crim. Case No. 3:05-cr-103-RJC-DCK-2, Doc. No. 467).

Similarly, Petitioner's assertions of error in applying the Sentencing Guidelines (Claim 13), by finding that he played a leadership role in the offense and that a three-level enhancement applied because he was on supervised release at the time of the offense,[1] is not cognizable under § 2255 because he has not shown extraordinary circumstances. The enhancement for playing a leadership role in the offense was affirmed by the Fourth Circuit and may not be re-litigated on collateral review. See United States v. Linder, 552 F.3d 391, 397 (4th Cir. 2009). Additionally, at the time of Petitioner's original sentencing, a two-point enhancement under U.S.S.G. § 4A1.1(d) applied because Petitioner was on supervised release at the time of the offense and a one-point enhancement under § 4A1.1(e) applied because the offense was committed less than two years following his release from custody. See (Crim. Case No. 3:05-cr-103-RJC-DCK-2, PSR at ¶¶ 62-63). The subsequent amendment of the Guidelines removing the additional one-point enhancement for committing the offense less than two years following release from custody does not apply under the 2006 Guidelines and was not made retroactive by the Sentencing Commission.

Petitioner also argues that this Court erred by requiring him to reimburse the Government for court and attorney fees without making a specific finding regarding his ability to pay (Claim 17). (Doc. No. 1 at 81; see United States v. Moore, 666 F.3d 313, 322 (4th Cir. 2012).[2] A challenge to court and counsel fees is not a cognizable claim under 28 U.S.C. § 2255 because, similar to a challenge to a fine or restitution, it does not affect Petitioner's custody. See Carpenter v. United States, No. 3:15-CV-161, 2015 WL 5254185, at *4 (W.D.N.C. Sept. 9,

---

[1] This claim also is procedurally barred because it was not raised at trial or on direct appeal.
[2] The Government notes in its brief that Moore, which held that a district court must base its reimbursement order on a finding that the defendant has the ability to pay the funds, was not decided until after Petitioner was originally sentenced and the law was not clear before this.

2015).  Moreover, because "the alleged sentencing error is neither constitutional nor jurisdictional, a district court lacks authority to review it" under Section 2255 "unless it amounts to 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015).  The concept of a miscarriage of justice is "grounded in the notion of actual innocence," which ordinarily does not extend to sentencing errors.  Id.  This Court's order requiring Petitioner to reimburse the Government for court and attorney fees without making a specific finding regarding his ability to pay, even if erroneous, would not amount to a miscarriage of justice cognizable under Section 2255.[3]  See id.

Next, because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims (Claims 1 and 5), by raising them before this Court and the Fourth Circuit, these claims also are not cognizable on collateral review.  See Stone, 428 U.S. at 494.  Despite admitting that he raised his Fourth Amendment claims before this Court "not only once but twice," Petitioner argues that he did not have a full and fair opportunity to litigate these claims because they were not litigated in light of the decision in Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364 (2009), which was issued after his first appeal, but before his resentencing on Count One.  (Doc. No. 1 at 39-48).

Petitioner has not shown that the subsequent decision in Safford deprived him of a full and fair opportunity to litigate his Fourth Amendment claims, nor has he shown that this decision changed the law with respect to his case.  Safford addressed the search of an adolescent in a school setting where there was no indication of danger to students from either the quantity or strength of the Ibuprofen and Naproxen that were found before the search of the student's

---

[3]  This claim is also procedurally barred because Petitioner did not challenge it at sentencing or on direct appeal.

undergarments.  <u>Safford</u>, 557 U.S. at 376-77.  The Court reaffirmed its holding in <u>New Jersey v. T.L.O.</u>, 469 U.S. 325 (1985), that "a school search 'will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.'"  <u>Safford</u>, 557 U.S. at 370 (quoting <u>T.L.O.</u>, 469 U.S. at 342).  Here, the search was not of a student at a school, but rather a person who had been arrested following a planned drug transaction set up by an informant, where the search "was justified not only by [the officers'] suspicion that [Petitioner] was concealing contraband, but also because [Petitioner] presented a legitimate danger to their personal security."  <u>Daniels</u>, 323 F. App'x at 207.  Given the different context of <u>Safford</u>, with respect to the setting, the actors, and the conduct at issue, it is distinguishable from the search of Petitioner and the decision does not call into doubt the prior determination of both this Court and the Fourth Circuit that Petitioner's Fourth Amendment rights were not violated.  Petitioner's Fourth Amendment claims are also barred because they have been previously decided by the Fourth Circuit.  <u>See</u> <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976) (claims considered on direct review may not be recast "under the guise of collateral attack").  Although there is an exception to the re-litigation doctrine for intervening changes in the law, Petitioner has not shown such a change here, as discussed above.

In sum, because Petitioner's Claims 1, 5, 13, 17, and 18 are not cognizable under § 2255, they will be dismissed.

**2.      Petitioner's Remaining Contentions Other than Those Raising Ineffective Assistance of Counsel (Included in Claims 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 19, and 20).**

The Court further finds that, as to the remaining contentions raised by Petitioner that do

not address ineffective assistance of counsel, those claims are either procedurally defaulted and/or without merit. A § 2255 motion is not a substitute for a direct appeal and may not be used to circumvent issues raised on direct appeal. See Linder, 552 F.3d at 397. Claims of errors that could have been raised on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense. See Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). A subsequent change in the law justifies the failure to raise an issue only where the state of the law was such that "the legal basis for the claim was not reasonably available when the matter should have been raised." Id.

To show actual prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional dimension. See United States v. Frady, 456 U.S. 152, 170 (1982). To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014), cert. denied, 135 U.S. 1467 (2015). Actual innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent." See Mikalajunas, 186 F.3d at 494.

The following claims are procedurally barred due to Petitioner's failure to raise them on direct appeal: (1) violation of the Confrontation Clause (Claim 7); (2) this Court's failure to continue the trial (Claim 8) and failure to give a unanimity instruction or an instruction on buyer/seller relationships (Claims 10, 14-15); (3) prosecutorial misconduct (Claims 11, 19); (4)

interference with the attorney-client relationship (Claim 12); (5) violation of the Double

Jeopardy Clause (Claim 16); and (6) cumulative error (Claim 20).[4]  Petitioner has not alleged or

shown cause or prejudice for the failure to raise these issues on direct appeal, nor has he shown

actual innocence based on these claims.  Accordingly, they are subject to dismissal as

procedurally barred.  See Bousley, 523 U.S. at 621-22.  Furthermore, even if these claims could

be addressed, they are meritless, as discussed below.

### (a) Confrontation Clause Violation

Petitioner first argues that his Confrontation Clause rights were violated where results of

tests conducted by forensic chemist James Whiteside were submitted to the jury, but where Mr.

Whiteside did not testify at trial.  (Doc. No. 1 at 59-60 (Claim 7)).  Petitioner cites crime

laboratory reports, listing firearms and indicating that either they were not processed or that no

latent fingerprints were found.  (Doc. 1-1 at 57-60).   He argues that there was insufficient

evidence to connect him to the firearms, that no fingerprints were found, and that he should not

have been convicted of being a felon in possession of a firearm.  (Doc. No. 1 at 60).

Petitioner does not cite where these reports were admitted at trial, but even if he could

show that they were improperly admitted as testimonial evidence, he cannot show any prejudice

from their admission because the reports showed that no fingerprints were found on the

firearms—a fact that Petitioner would have purportedly established if he were able to cross-

examine Whiteside at trial.  See United States v. Hernandez, 166 F.3d 335, at *3 (4th Cir. 1998)

(unpublished table decision) (applying harmless error analysis to alleged Confrontation Clause

---

[4]   Although Petitioner raised a number of issues in his supplemental pro se brief in the appeal of
his resentencing on Count One, these issues were beyond the scope of the mandate and Petitioner
would be barred from re-litigating them since the Fourth Circuit held that it had reviewed the
issues and "found no meritorious issues for appeal."  Daniels, 493 F. App'x 442.

violation). Accordingly, his Confrontation Clause claim lacks merit.

**(b) Trial Court Errors**

**(1) Failure to continue trial**

Petitioner next argues that this Court erred by denying his motion to continue the trial based on the Government's disclosure of additional discovery, which included <u>Brady</u>, <u>Giglio</u>, and <u>Jencks</u> material, on June 5, 2005, three days before the presentation of evidence began. (Doc. No. 1 at 61) (Claims 8 and 9)). He contends he was prejudiced because his attorney was not prepared for trial, as shown by the fact that he did not call Whiteside to testify that he did not find any fingerprints on the firearms. (<u>Id.</u> at 62-63).

"The decision to grant or deny a motion for a continuance, lies within the sound discretion of the trial court" and will not be reversed unless prejudice is established. <u>United States v. Colon</u>, 975 F.2d 128, 130 (4th Cir. 1992). Here, Petitioner has not shown that this Court abused its discretion in denying the motion for a continuance, nor has he shown prejudice. Petitioner's assertion of prejudice relates to the firearm counts. As discussed above, he contends that he was prejudiced by the failure to call forensic chemist James Whiteside, who could have testified that Petitioner's fingerprints were not found on the firearms. However, even if such testimony had been admitted, the evidence supporting the firearm counts was adequately established through Douglas's testimony that she purchased three firearms for Petitioner, as well as the testimony of Jackson and Edwards that they had seen Petitioner carrying firearms. Any testimony that no fingerprints were found on the weapons would not have changed this result. In sum, Petitioner's contention regarding this Court's refusal to continue the trial based on disclosure of new discovery is without merit.

**(2) Jury Instructions**

Petitioner next argues that this Court erred by denying his counsel's request for a unanimity instruction regarding the firearm offense in Count Eight. (Doc. No. 1 at 67-68) (Claim 10)). He contends that if this instruction had been given it would have changed the outcome because there was insufficient evidence to show his control over the firearms in question. (Id.). A specific unanimity instruction is not required where multiple firearms are alleged in a single felon in possession of a firearm count. See United States v. Drayton, 51 F. App'x 95, 97 (4th Cir. 2002); United States v. Verrecchia, 196 F.3d 294, 301 (1st Cir. 1999). It is the possession of a firearm, not a particular firearm, that § 922(g) punishes. Verrecchia, 196 F.3d at 301. Accordingly, this Court did not err in failing to give this instruction.

Petitioner also contends that this Court erred in denying the jury instruction that he requested on buyer/seller relationships. (Doc. No. 1 at 77-78) (Claim 15)). A district court does not err in refusing to give a buyer-seller defense instruction where the facts show that a relationship went beyond a buy-sell transaction. United States v. Mills, 995 F.2d 480, 485 (4th Cir. 1993). Here, the evidence was sufficient for a jury to determine that Petitioner shared a common conspiratorial purpose. McCombs testified that he was involved in a conspiracy with Petitioner, Douglas testified that she bought firearms at Petitioner's direction, and Boyd testified that Petitioner sometimes used an intermediary when selling him drugs. Thus, this contention is without merit.

### (3) Failure to allow indictments relating to Jackson to be submitted to the jury

Finally, Petitioner contends that this Court erred by not allowing indictments relating to Petitioner's co-defendant Adreian Jackson, which would have shown multiple conspiracies involving different people, to be provided to the jury during deliberations. (Doc. No. 1 at 77) (Claim 15)). He contends that this was a per se violation and should be presumed to have

affected his substantial rights. (Id. at 78).

Whether to submit an indictment to the jury is a matter within the district court's discretion. United States v. Polowichak, 783 F.2d 410, 413 (4th Cir. 1986). Even when an indictment is submitted to a jury, irrelevant allegations ordinarily should be redacted. See id. Petitioner's allegation that this Court should have submitted to the jury indictments involving different people and conspiracies was not an abuse of discretion and did not affect his substantial rights. As this Court found, submission of another indictment would have created the potential for juror confusion. (Crim. Case No. 3:05-cr-103-RJC-DCK-2, Doc. No. 309 at 48-49). Thus, this contention is without merit.

### (c) Prosecutorial Misconduct

Petitioner next argues that the Government engaged in prosecutorial misconduct. Petitioner asserts that when he was arraigned on the Third Superseding Indictment, the prosecutor stated that the only change in the indictment was adding one month to the length of the conspiracy charge in Count One, when in fact the charge was expanded by 21 months. (Doc. No. 1 at 69-70 (Claim 11)). Petitioner contends that he was contemplating entering a guilty plea at this time but when he expressed this to his attorney, his attorney informed him they were only there because the Government wanted to expand the conspiracy count by one month. (Id. at 70).

Petitioner's prosecutorial misconduct claim is without merit. To establish prosecutorial misconduct, Petitioner must demonstrate: (1) that the conduct of the United States was improper, and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). Here, even if the prosecutor misstated the term of the conspiracy in the superseding indictment, Petitioner cannot show prejudice because, before his rearraignment on the Third Superseding Indictment, his

attorney moved for a continuance of trial, citing the fact that the superseding indictment enlarged the timeframe for the conspiracy by two-and-a-half years. (Crim. Case No. 3:05-cr-103-RJC-DCK-2, Doc. No. 197). Additionally, Petitioner requested a formal reading of the superseding indictment at rearraignment. (Id., Minute entry dated June 1, 2006). Thus, he was adequately informed of the timeframe alleged in the indictment. He does not allege that he would have pleaded guilty except for this, nor has he shown how this would have affected any attempt to plead guilty.

As part of his prosecutorial misconduct claim, Petitioner also argues that the investigating officer falsified evidence in this case by placing Petitioner's name on a mailing envelope from Carolinas Medical Center in order to show that Petitioner lived at the apartment at 1305 Kelston Place. (Doc. No. 1 at 84-85; Doc. No. 1-1 at 82: Pet. Ex. 9). Petitioner asserts that this was the only evidence that linked him to 1305 Kelston Place and his conviction for possession of a firearm by a convicted felon. (Id.). He contends that this was a Brady violation because he could have used the envelope to impeach any testimony that he lived or had control over this residence.

Petitioner's argument fails. Even if it could be shown that Petitioner's name was improperly added to an envelope, the absence of his name on the envelope could not have been used to impeach any testimony that he lived at the residence. In any event, and more significantly, given Douglas's testimony that she and Petitioner lived together at 1305 Kelston Place, the contention that an envelope was the only evidence linking him to that address is simply incorrect.

In sum, Petitioner's claim of prosecutorial misconduct is without merit.

**(d) Interference with Attorney-Client Relationship**

21

Petitioner next argues that his Sixth Amendment rights were violated when he was placed on lockdown and had limited access to his attorney and no access to legal documents. (Doc. No. 1 at 71-73 (Claim 12)). He contends that he was denied numerous legal visits. (Id. at 71-72). He asserts that he was solely dependent on his attorney to review paperwork and that he did not have an opportunity to go over information with his attorney or to discuss the possible consequences of pleading guilty or going to trial. (Id. at 72-73). He contends that if he had been able to assist his attorney, "witnesses could have easily been impeached," an effective defense could have been made, and this "would have changed the outcome of the trial." (Id. at 73).

Petitioner was placed in solitary confinement following his attack on another inmate (co-defendant Jackson's father Avery Brice), as well as disciplinary problems with the United States Marshals and two local jail facilities. See (Crim. Case No. 3:05-cr-103-RJC-DCK-2, Doc. Nos. 192 and 192-1). According to the Marshals Service, he was still allowed to have contact visits with his attorney, to call his attorney, and to send and receive mail. (Id., Doc. No. 192-1). At a hearing regarding Petitioner's motion to be released from solitary confinement, this Court noted that Petitioner also had created a disturbance in court and found that the restrictions placed on him were rationally related to safety concerns. (Id., Doc. No. 227-1 at 89-91). Defense counsel argued that on several occasions he had only been allowed a non-contact visit with Petitioner. (Id. at 92-94). This Court instructed defense counsel and the Government to work with the Marshals Service to ensure that defense counsel received adequate access and the Court stated that it would hear from counsel again if the problem was not resolved. (Id. at 95-96). The parties did not raise the issue of attorney/client contact again following the hearing.

Petitioner has not shown that the security restrictions placed on him due to his conduct deprived him of his Sixth Amendment right to counsel. Defense counsel indicated that he was

22

able to meet with Petitioner, though perhaps under more limited circumstances, and it appears that the parties were able to resolve the access issue before trial.  Furthermore, Petitioner cannot show prejudice based on his conclusory assertions that unidentified witnesses could have been impeached and the outcome of trial would have been different.  See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations).  In sum, Petitioner's contention as to the Government's interference with the attorney-client relationship is without merit.

### (e) Double Jeopardy

Petitioner next argues that his prosecution on Counts One, Five, and Six violates double jeopardy because the State of North Carolina assessed a drug tax against him after his arrest and this constituted a prior criminal penalty.  (Doc. No. 1 at 79-80 (Claim 17)).  The Double Jeopardy Clause "does not bar successive prosecutions by different sovereigns."  Lynn v. West, 134 F.3d 582, 593 (4th Cir. 1998).  Accordingly, because Petitioner is challenging his federal prosecution based on a state penalty, there is no double jeopardy violation.

### (f)　　Petitioner's Sixth Amendment Alleyne Claim

Petitioner also purports to bring an independent Sixth Amendment claim, under Alleyne v. United States, 133 S. Ct. 2151 (2013), in which he contends that his Sixth Amendment right to have a jury determine the elements of his offense beyond a reasonable doubt has been violated because this Court found a fact that increased his statutory minimum sentence by basing the sentence on heroin, which is more heavily punished than cocaine.  (Doc. No. 1 at 27-35) (Claims 2 and 3).  He argues that this requires resentencing on Counts One, Five, and Six.  (Id. at 34-35). Petitioner asserts that the amount of drugs found by the district court increased his mandatory minimum sentence from ten years to twenty years.  (Id. at 32-33).

Petitioner's argument is misplaced both because <u>Alleyne</u> has not been made retroactively applicable on collateral review, see <u>United States v. Stewart</u>, 540 F. App'x 171, 172 n. (4th Cir. 2013), and because he was sentenced under 21 U.S.C. § 841(b)(1)(B), which provides for a ten-year mandatory minimum sentence. The facts found by this Court merely increased the applicable guidelines range, not the statutory range, so there was no Sixth Amendment error. Thus, Petitioner's <u>Alleyne</u> claim is without merit.

**(g) Petitioner's Claim of "Actual Innocence" as to the Enhanced Sentence under 21 U.S.C. §§ 841(b)(1) and 851**

Petitioner also asserts that he is "actually innocent" of the enhanced sentence that he received under 21 U.S.C. §§ 841(b)(1) and 851 because his prior New York drug conviction does not qualify as an aggravated felony and that this is sufficient to overcome any procedural bar. (Doc. No. 1 at 36-38 (Claim 4)). He argues that he could not have received more than six months of imprisonment for the offense and that because this offense could be either a felony under 21 U.S.C. § 841(a)(1) or a misdemeanor under 21 U.S.C. § 844, under the categorical approach this conviction must be counted as a misdemeanor. (<u>Id.</u> at 37). He asserts that this conviction also was used to increase the mandatory minimum sentence he was subject to in violation of due process. (<u>Id.</u> at 37-38). As discussed below as to his related ineffective assistance of counsel claim, Petitioner's prior conviction for fourth-degree criminal possession of a controlled substance qualified as a prior felony drug conviction under § 841(b)(1)(B), and Petitioner's claim to the contrary does not overcome the procedural bar, due to his failure to raise this issue on appeal, because he cannot show actual innocence. Thus, this contention is without merit.

**(h)     Cumulative Error**

Petitioner next asserts that he was prejudiced in light of the cumulative effect of these

errors. (Doc. No. 1 at 86 (Claim 20)). Given that the Court concludes in this order that he has not established any error, this claim also fails.

**3.     Petitioner's Contentions of Ineffective Assistance of Counsel at Trial, during Appeal, and at Resentencing (Included in Claims 6, 8, 9, and 14).**

Petitioner also argues that he received ineffective assistance at trial, on appeal, and when he was resentenced. Under the Sixth Amendment, criminal defendants have the right to effective assistance of counsel. U.S. CONST. amend. VI. To prevail on a § 2255 claim of ineffective assistance of counsel, a petitioner has the burden of establishing both (1) that defense counsel's performance was deficient, in that counsel's "representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) that this deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). To establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In considering the prejudice prong, a court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). If a petitioner fails to conclusively demonstrate prejudice, the reviewing court need not consider whether counsel's performance was deficient. United States v. Terry, 366 F.3d 312, 315 (4th Cir. 2004).

**(a) Ineffective Assistance of Trial Counsel**

Petitioner argues that his attorney provided ineffective assistance at trial by failing to (1) communicate a plea offer or (2) obtain a continuance of the trial. The Court will address each of these grounds in turn.

Petitioner first argues that trial counsel failed to communicate a plea offer from the Government and that if he had known about this plea deal, he would have taken it. (Doc. No. 1 at 64-65; see Doc. 1-1, 61-69 (proposed plea agreement listing James Weidner as defense counsel). He submitted an affidavit stating that his attorney "never brought to my attention a plea agreement offer from the U.S. Attorney's Office." (Doc. No. 1-1 at 87).

Petitioner's contention that his attorney did not advise him of a plea offer from the Government is belied by his own admission. In a motion to this Court seeking to appoint additional counsel, he complained about Mr. Weidner's representation and stated that on August 15, 2005, his attorney paid him a brief visit and dropped off a plea agreement from the Government. (Crim. Case No. 3:05-cr-103-RJC-DCK-2, Doc. No. 73 at 2). Because Petitioner received the plea agreement and did not accept it, he cannot show either deficient performance or prejudice. See Strickland, 466 U.S. at 687-88, 694.

Petitioner next asserts that, although his attorney moved to continue the trial, he was ineffective because the trial should have been continued after the disclosure of Brady and Jencks material. (Doc. No. 1 at 62 (Claims 8 and 9)). Petitioner also alleges that his counsel was unprepared for trial and that if he had been prepared, he would have called forensic chemist Whiteside to testify that Petitioner's fingerprints were not found on the firearms, and he would have called other co-defendants who would have testified that they pleaded guilty to having the firearms charged in the indictment. (Id. at 62-64).

Petitioner cannot show deficient performance simply because his counsel's request for a

continuance was denied.  Additionally, he cannot show prejudice based on his conclusory assertions as to what uncalled witnesses might have testified to.  See Dyess, 730 F.3d at 359-60; Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (holding that ineffective assistance cannot be established on a "general claim" that other witnesses should have been called).

In sum, Petitioner's contentions regarding ineffective assistance of trial counsel are without merit.

**(b) Ineffective Assistance of Appellate Counsel**

Petitioner also contends that appellate counsel rendered ineffective assistance.  Courts should ordinarily only find ineffective assistance for failure to raise claims on appeal when "ignored issues are clearly stronger than those presented."  Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted).  Appellate counsel is not required to assert all non-frivolous issues on appeal.  Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985).  Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues.  Smith v. Murray, 477 U.S. 527, 536 (1986).  Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy."  Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).  Additionally, the petitioner still bears the burden to show that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, i.e., he would have prevailed on appeal.  See Robbins, 528 U.S. at 285-86.

Petitioner argues that his appellate counsel provided ineffective assistance by not arguing on appeal that there was insufficient evidence to establish a buyer-seller relationship for the drugs because there were not repeat purchases, nor was a large volume of narcotics sold.  (Doc. No. 1 at 76 (Claim 14)).  He also asserts that there was insufficient evidence to find that he

played an aggravated role in the offense, contending that he did not control any aspects of the drug-dealing activities. (<u>Id.</u>). Petitioner's buyer-seller relationship argument undercuts his contention that this Court should have instructed the jury regarding a buyer-seller relationship. Additionally, his contention that there were not repeat purchases and that the volume of narcotics sold was not large is plainly contradicted by the evidence presented at trial that Petitioner repeatedly sold drugs in significant quantities to a number of people. Because there was no factual basis to support this claim, Petitioner can show neither deficient performance, nor prejudice based on counsel's failure to raise this issue on appeal. <u>See</u> <u>Robbins</u>, 528 U.S. at 285-86.

Next, because counsel argued on appeal that application of the enhancement for playing a leadership role in the offense was improper, and the Fourth Circuit rejected this argument, determining that the evidence was sufficient to support this finding, Petitioner can show neither deficient performance, nor prejudice with respect to this issue. <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88, 694.

In sum, Petitioner's contentions regarding ineffective assistance of appellate counsel are without merit.

(**c**)     **Ineffective Assistance of Counsel at Resentencing**

Petitioner next argues that counsel provided ineffective assistance at resentencing by: (1) not raising <u>Collins</u> error again; (2) making errors in the sentencing memorandum; (3) not arguing that he should receive a lower sentence due to his efforts at rehabilitation; (4) not arguing that his sentence should have been reduced based on Amendments 715 and 742 to the Sentencing Guidelines; (5) not arguing that the use of his prior conviction violated the intervening decision in <u>Simmons</u>; and (6) not providing him with the Supplemental PSR or objecting to the amount of

drugs it included. (Doc. No. 1 at 49-58) (Claim 6). For the following reasons, none of these contentions has merit.

"[A] remand proceeding is not the occasion for raising new arguments or legal theories." Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 481 (4th Cir. 2007). Rather, the district court's authority on remand is limited. Doe v. Chao, 511 F.3d 461, 465 (4th Cir. 2007). Issues conclusively decided by the Court of Appeals in the original appeal are not remanded, and any issues that could have been raised in the first appeal, but were not, are waived. (Id.).

First, as to Petitioner's claims that his sentence was remanded due to Collins error (Claims 1 through 3), he has not shown any deficient performance or prejudice based on counsel's failure to re-raise this issue. The errors in the sentencing memorandum related to listing the wrong docket number and sentencing date, neither of which established deficient performance or prejudice. See (Id. at 51). Furthermore, counsel submitted evidence to this Court at resentencing regarding Petitioner's having completed a number of programs while in prison, and this Court stated that it considered this evidence in resentencing him. Thus, counsel's performance was not deficient, and Petitioner has not shown a reasonable probability that pointing to the payment of his fine would have changed the sentence imposed by this Court. Accordingly, these allegations do not show deficient performance or prejudice.

Petitioner also asserts that, based on Amendment 742, his counsel at resentencing should have objected to the recency points added under the Guidelines for being on supervised release at the time of the offense. (Id. at 56 (Claim 6)). He contends that his conviction was not yet final at the time he was resentenced. (Id.). He also contends that counsel should have objected to the amount of drugs in the PSR based on Amendment 715, which would have reduced his base

offense level by two points.  (Id. at 57).

Pursuant to 18 U.S.C. § 3742(g), when a case is remanded to the district court for resentencing, the district court should apply the Guidelines that were in effect at the time the original sentence was imposed.  See United States v. Caplinger, 155 F. App'x 730, 731 (4th Cir. 2005).  Amendment 742 took effect on November 1, 2010, and is not retroactive because it is not listed in U.S.S.G. § 1B1.10.  See United States v. Rhodes, 531 F. App'x 279, 279-80 (4th Cir. 2013) (citing United States v. Dunphy, 551 F.3d 247, 249 n.2 (4th Cir. 2009)).  Because the 2006 Guidelines applied to Petitioner's sentence, Amendment 742 does not apply to him.  Although Amendment 715 became effective in 2008 and was made retroactive under § 1B1.10, it does not apply to Petitioner because it addresses sentences that include cocaine base.  Petitioner was sentenced for powder cocaine.  Accordingly, sentencing Petitioner based on the Guidelines in effect at the time of his original sentencing was proper, and he has not shown deficient performance by counsel or prejudice based on the failure to raise these issues.

Petitioner also argues that counsel provided ineffective assistance at resentencing by failing to challenge the use of his prior New York conviction for possession of a controlled substance to impose a ten-year-mandatory minimum sentence.  (Doc. No. 1 at 54-56 (Claim Four)).  He asserts that, pursuant to Carachuri-Rosendo v. Holder, 560 U.S. 563 (2013), and United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), his prior sentence was only a misdemeanor and counsel should have argued that there was in intervening change in the law when he was resentenced.  Id.  He states that he was sentenced to only six months of imprisonment under New York's Youth Offender Act.  (Doc. No. 1 at 55).  He contends that he would not have received a ten-year mandatory minimum for Counts One, Five, or Six had counsel objected on this basis.  (Id. at 55-56).

30

Petitioner's argument fails. Petitioner's prior conviction for fourth-degree criminal possession of a controlled substance was a Class C felony under New York Penal Law § 220.09 (1989) and was punishable by up to 15 years in prison. The fact that he received a shorter sentence is immaterial because a "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State . . . that prohibits or restricts conduct relating to narcotic drugs . . . ." 21 U.S.C. § 802(44); see United States v. Campos, 163 F. App'x 232, 233-34 (4th Cir. 2006). Accordingly, this conviction qualified as a prior felony drug conviction under 21 U.S.C. § 841(b)(1)(B). See United States v. Jackson, 504 F.3d 250, 253 (2d Cir. 2007) (holding that New York youthful offender conviction for a state drug offense punishable by up to seven years in prison was a prior felony drug offense supporting an enhanced sentence under 21 U.S.C. § 841(b)(1)(B)). Therefore, Petitioner can show neither deficient performance, nor prejudice based on counsel's failure to raise this issue. See Strickland, 466 U.S. at 687-88, 694.

Petitioner next asserts that his counsel did not show the two-page supplemental PSR to him. (Doc. No. 1 at 50 (Claim Six)). He asserts that there were errors in it and in counsel's response, such as a stipulation that the amount of drugs found on March 5, 2005, was attributable to Petitioner. (Id. at 51). Petitioner contends that the PSR stated that the amount was 254 grams of heroin (rather than the correct amount of 202 grams), and 1097 grams of cocaine (rather than the correct amount of 518 grams). (Id.). Petitioner asserts that he asked his attorney to correct the inaccurate amounts from the first PSR. (Id.). He also contends that his attorney introduced false evidence from outside of the record to support an enhanced sentence. (Id. at 53). Petitioner asserts that if the testimony of Jennifer Mills and the lab reports were true, then the information in the original PSR was unreliable. (Id. at 52).

31

In the resentencing memorandum, defense counsel conceded that Petitioner did not challenge the finding that more than 500 grams of powder cocaine was involved in the offense. (Doc. 1-1 at 92). However, counsel objected to the amount of heroin involved in the offense, arguing that only 254 grams of heroin should have been found, which would have resulted in a base offense level of 28. (Id.). At the resentencing hearing, counsel showed the supplemental PSR to Petitioner, this Court explained what the supplemental PSR stated and confirmed with Petitioner that he had reviewed the sentencing memorandum filed by his attorney. (Crim. Case No. 3:05-cr-103-RJC-DCK-2, Doc. No. 425 at 2-4). Petitioner agreed that he had a sufficient understanding of the proceeding to go forward. (Id. at 4).

To the extent that counsel agreed that over 500 grams of powder cocaine was involved in the offense, this was not deficient performance in light of the Fourth Circuit's holding that there was "overwhelming and uncontroverted evidence that over 500 grams of cocaine was attributable to Daniels." Daniels, 323 F. App'x at 215. Petitioner's real contention seems to be that counsel was ineffective for failing to challenge the additional amount of cocaine that was attributed to him by the PSR. However, because this Court overruled counsel's argument that less than 1 kilogram of heroin was involved in the offense, Petitioner cannot show any prejudice. Even considering only the 518 grams of cocaine that were found at the apartment and identified by Mills at trial, when this is combined with 1 kilogram of heroin and converted to the marijuana equivalent, it still exceeds 1,000 kilograms, the quantity required to reach a base offense level of 32. See (Crim. Case No. 3:05-cr-103-RJC-DCK-2, PSR at ¶ 21; U.S.S.G. 2D1.1 (2006). Accordingly, Petitioner cannot establish prejudice based on counsel's failure to challenge the amount of cocaine attributed him at resentencing. Nor can he establish deficient performance or prejudice where counsel's objection to the amount of heroin was overruled. Therefore, his

allegations of ineffective assistance of counsel during the resentencing proceedings are denied.

**B. Claim Raised in Petitioner's Motion to Amend**

Pursuant to Federal Rule of Civil Procedure 15, this Court may grant leave to amend "when justice so requires" or may grant leave to supplement when a transaction or event occurs after the pleading to be supplemented. FED. R. CIV. P. 15(a)(2), (d). Unless there is bad faith, undue prejudice to the opposing party, or an amendment would be futile, leave to amend is generally freely given. See United States v. Pittman, 209 F.3d 314, 315 (4th Cir. 2000). If a cause of action is barred by the statute of limitations, amendment to add such a claim should be denied as futile. See id. Section 2255 provides for a one-year limitations period. 28 U.S.C. § 2255(f).

Petitioner seeks to assert a new claim of prosecutorial misconduct with respect to the search of his apartment. (Doc. No. 17 at 2, 5). He alleges that he has evidence to support this claim, but he does not provide such evidence. Accordingly, this claim is subject to dismissal for being conclusory. See Dyess, 730 F.3d at 359-60. Additionally, Petitioner has not shown that this claim is timely under § 2255(f), since he does not even allege, much less show, that the basis for his claim, which he has attempted to raise more than three years after filing his initial motion to vacate, could not have been discovered previously through the exercise of due diligence. Because the new claim that Petitioner seeks to raise is conclusory and untimely, his motion to amend is denied. See Pittman, 209 F.3d at 315.

**IV. CONCLUSION**

For the reasons stated herein, the Court will deny and dismiss the Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED** with prejudice.

33

2. Petitioner's Motion for Production of Documents, (Doc. No. 13), is **DENIED**.

3. Petitioner's Motion to Amend/Correct and Supplement Motion to Vacate, (Doc. No. 17), is **DENIED**.

4. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: March 31, 2017

Robert J. Conrad, Jr.
United States District Judge